Camila Cossío (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: 971-717-6427
ccossio@biologicaldiversity.org

*Lead Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. FISH AND WILDLIFE SERVICE; PAUL SOUZA, in his official capacity as Acting Director of the U.S. Fish and Wildlife Service; and DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior.<br><br>*Defendants*. | Case No._____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

# INTRODUCTION

1.      Plaintiff, the Center for Biological Diversity ("Center"), brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to issue a timely 12-month finding on the Center's petition to list the Crater Lake newt in violation of the Endangered Species Act's ("ESA" or "Act") nondiscretionary, congressionally mandated deadlines. The

Service's failure to meet the ESA deadline for the Crater Lake newt delays lifesaving protections for the newt, increasing its risk of extinction.

2. Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated section 4(b)(3)(B) of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to timely issue the 12-month finding for the Crater Lake newt, and directing the Service to issue the finding by a date certain.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201–2202; and 5 U.S.C. § 706(2).

4. Plaintiff provided Defendants with 60-days' notice of the ESA violation, as required by 16 U.S.C. § 1540(g)(2)(A), by a letter to the Service dated April 17, 2025. Defendants have not remedied the violations set out in the notice and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

6. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States, including Portland, Oregon. The Center has

more than 93,927 active members throughout the country and 32,849 active members and supporters in Oregon.

7. Plaintiff brings this action on behalf of their members who derive recreational, aesthetic, educational, scientific, professional, and other benefits from the Crater Lake newt and its habitat. As invasive crayfish continue to push the newt dangerously close to extinction, Plaintiff's members' interests in protecting and recovering the newt and its habitat are directly harmed by the Service's failure to issue a timely 12-month finding, delaying critical protections under the ESA that can prevent the Crater Lake newt from extinction and put the newt on a path to recovery.

8. For example, Janice Reid is a member of the Center for Biological Diversity and serves as President of Umpqua Watersheds, a nonprofit organization working to protect and restore the ecosystems of the Umpqua watershed and surrounding areas. She has a deep personal and professional connection to Crater Lake National Park, a place she has visited many times and plans to return to each summer, including in 2025, to hike, sightsee, and search for the Crater Lake newt. Through Umpqua Watershed's educational mission, she has helped coordinate field trips for elementary students from Douglas County to visit Crater Lake. Many of these children would not have the opportunity to experience the park and its wildlife without this support. During these trips, students learned about ecology and wildlife biology, and were often inspired by their firsthand experience in nature. Umpqua Watersheds also helped distribute "Every Kid in a Park" passes so that the students' families could visit public lands free of charge, including Crater Lake National Park. During a snowshoeing trip, Janice learned about the alarming decline of the Crater Lake newt, driven largely by the spread of invasive crayfish. The Service's delay in protecting the Crater Lake newt under the ESA directly harms Janice's recreational, aesthetic,

and moral interests. The newt's disappearance would diminish her personal enjoyment of Crater Lake and impact her ability to engage with the species and its unique habitat. It also undercuts the conservation and educational work of Umpqua Watersheds, whose mission is tied to preserving the natural history and biodiversity of the region.

9. Defendants' violation of the ESA's nondiscretionary mandatory deadline has delayed ESA protections to the Crater Lake newt. This inaction harms Plaintiff's members' interests in the newt by permitting the species' continued trajectory toward extinction, thereby decreasing the likelihood that the Center's members will encounter the species as part of their personal and professional excursions. These injuries are actual, concrete injuries presently suffered by Plaintiff's members, are directly caused by Defendants' acts and omissions, and will continue unless the Court grants relief. The relief sought would redress these injuries by providing ESA protection for the Crater Lake newt, thus promoting its conservation and recovery. Plaintiff and its members have no other adequate remedy at law.

10. Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA for the Crater Lake newt. The Secretary of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

11. Defendant PAUL SOUZA is the Acting Director of the Service and is charged with ensuring that Service decisions comply with the ESA. Defendant Souza is sued in his official capacity.

12. Defendant DOUG BURGUM is the Secretary of the U.S. Department of the Interior and has the ultimate responsibility to administer and implement the provisions of the ESA. Defendant Burgum is sued in his official capacity.

## STATUTORY FRAMEWORK

13. The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

14. The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

15. A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

16. The ESA requires the Service to determine whether any species is endangered or threatened because of any of, or combination of, the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

17. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby interested persons may petition the Service to list a species as endangered or threatened. *Id.* § 1533(b)(3). In response to a listing petition, the Service must

publish the following three decisions according to statutory deadlines. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id*. § 1533(b)(3)(A). This is known as the "90-day finding." If the Service finds in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

18. If the Service determines that a petition presents substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id*.

19. Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id*. § 1533(b)(3)(B).

20. If the Service determines that listing is "warranted," it must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and take public comments on the proposed listing rule. *Id*. § 1533(b)(3)(B)(ii). If the Service determines that listing is "not warranted," it must publish its finding in the Federal Register. *Id*. § 1533(b)(3)(B)(i). If the Service determines that listing is "warranted but precluded," it must publish its finding in the Federal Register "together with a description and evaluation of the reasons and data on which the finding is based." *Id*. § 1533(b)(3)(B)(iii). A "warranted but precluded" finding is treated as a petition that has been resubmitted to the Service

on the date of the finding and that presents substantial information indicating that the listing may be warranted. *Id*. § 1533(b)(3)(C)(i).

21.     Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species. *Id*. § 1533(b)(6)(A). This is known as a "final listing rule."

22.     The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. For example, section 4(a)(3) of the Act requires the Service to designate "critical habitat" for each endangered and threatened species concurrent with listing. *Id*. § 1533(a)(3).

23.     In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id*. §1536(a)(2).

24.     ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id*. §§ 1538(a)(1)(B), 1539; see also *id*. § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id*. § 1533(f); authorize the Service to acquire land for the protection of listed species, *id*. § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species. *Id*. § 1535(d).

## FACTUAL BACKGROUND

25.     The Crater Lake newt (*Taricha granulosa mazamae*), also known as the Mazama newt, is a distinct population of the rough-skinned newt (*T. granulosa*). The Crater Lake newt

only lives in Crater Lake in Oregon. Crater Lake is one of the deepest and most pristine lakes in the world. Because the newt evolved as the lake's top aquatic predator, it lacks predator defense mechanisms.



Crater Lake newt photo by National Park Service.

26. The Crater Lake newt is declining rapidly because of expansion of introduced signal crayfish (*Pacifastacus leniusculus*) that are preying upon and outcompeting the newt. The crayfish were introduced to feed introduced fish in the early twentieth century. Because crayfish now occupy over 95% of Crater Lake's shoreline, and newts cannot co-exist with crayfish, the newt has declined significantly.

27. In 2020, National Park Service data suggested that Crater Lake newts will become extinct by 2025 based on the expansion of invasive crayfish into the newt's habitat. In 2023 National Park Service surveys detected 35 newts and in 2024 scientists found only 13 newts, indicating that the Crater Lake newt is rapidly headed towards extinction.

28. The newt is also threatened by warming lake temperatures from climate change, and its vulnerability is compounded by its small population and highly restricted range. The

signal crayfish is projected to occupy 100% of the lake's shoreline within the year, likely rendering the newt extinct.

**Listing Petition and Response**

29. The Center petitioned the Service to list the Crater Lake newt on an emergency basis, on November 28, 2023, as an endangered species under the ESA and for the Service to designate critical habitat.

30. The Service found the Crater Lake newt may warrant listing on October 8, 2024. 89 Fed. Reg. 81388 (Oct. 8, 2024). Specifically, the Service found the Center's petition presented substantial information that indicated listing may be warranted due to threats from predation by introduced species (particularly by signal crayfish). *Id.* at 81391. The Service also found the petition may be warranted based on habitat and food web alteration by signal crayfish, climate change, reduced effective population size, and range restriction. *Id.*

31. Because the Service found the petition may be warranted, its 12-month finding was due one year after receipt of the petition. The deadline for publication of the 12-month finding was November 28, 2024, but the Service has not yet made a 12-month finding for the Crater Lake newt. The finding is thus past due.

## CLAIMS FOR RELIEF

**Violation of the ESA for Failure to Publish a Timely 12-Month Finding
for the Crater Lake newt**

32. Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

33. The ESA requires the Service to publish a 12-month finding within 12 months of receiving a petition to list a species under the Act when the Service has made a positive 90-day finding that listing may be warranted. 16 U.S.C. § 1533(b)(3)(B).

34. In response to the Center's 2023 petition to list the Crater Lake newt as endangered under the ESA, the Service issued a positive 90-day finding for the newt in 2024 and thus its 12-month finding was due 12 months after the petition was submitted—November 28, 2024.

35. Defendants have not made the statutorily required 12-month finding for the Crater Lake newt.

36. Defendants failed to perform their nondiscretionary duty to timely publish a 12-month finding in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1. Declare that Defendants violated the ESA by failing to issue a timely 12-month finding in response to the Center's petition to list the Crater Lake newt as an endangered species;

2. Provide injunctive relief compelling Defendants to issue the 12-month finding by a date certain;

3. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5. Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated this July 3, 2025.

/s/ *Camila Cossío*

Camila Cossío (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: 971-717-6427
ccossio@biologicaldiversity.org

Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023-3278
Phone: 805-750-8852
bsegee@biologicaldiversity.org
Pro Hac Vice Admission Pending

*Attorneys for Plaintiffs*